# Laurel Hill Slate Company, Plff. in Err., *v.* James A. Snyder.

McH. & P., owners of a quarry, purchased from S. in 1884 three cutting machines for $300; of this amount $162 was paid. March 11, 1885, McH. & P. conveyed their interest to an incorporated company in which they were stockholders and of which B. was secretary and treasurer. S. brought suit against the company for $138 as a balance due on a cutting machine. At the trial he testified that before March, 1885, McH. said to him that he (McH.) was going to get up a new company, and if he (S.) made a new machine he could sell it; that he made the machine and put it on the company's premises some time in March; that B. inspected the machine and took it with the stock of McH. & P. and that the company subsequently continuously used the machine. McH. contradicted S.'s testimony and maintained that the machine was one of the three sold to McH. & P. *Held*, that S.'s testimony, though contradicted, was sufficient to submit to the jury.

(Argued February 2, 1888. Decided March 19, 1888.)

July Term, 1887, No. 157, E. D., before GORDON, Ch. J., PAXSON, STERRETT, CLARK, and WILLIAMS, JJ. Error to the Common Pleas of Lehigh County to review a judgment in favor of the plaintiff on an appeal from a justice of the peace. Affirmed.

This action was brought by James A. Snyder against the Laurel Hill Slate Company before a justice of the peace to recover a balance of $138 alleged to be due on a cutting machine. The justice awarded judgment in favor of the plaintiff and the defendant appealed.

The justice's record showed the claim to be for $138 "as a balance due on circular saw and register cutting machine."

At the trial before ALBRIGHT, P. J., the following facts appeared:

In 1883 a quarry in Lynn township, Lehigh county, was sold by its owners to Aaron C. McHose and Edward Patton, who conducted the business of quarrying and manufacturing slate under the name of McHose & Patton, although their quarry was known in the neighborhood as the Laurel Hill Slate Company.

In May, 1884, James A. Snyder, who was the foreman of the quarry, was the owner of three machines which were then in the possession of certain persons named Keim, who operated a neighboring quarry. Snyder told McHose that the Keims were fooling him and did not treat him right in the use of his machines and at the same time offered to sell them to McHose. McHose agreed to take them for $300. Two of the machines were then put up in the factory of McHose & Patton. The defendants claimed that the third machine was a mere attachment and was not put up, but was sold to the Keims with the consent of McHose, but on the understanding with Snyder that he would furnish a new machine in its place. Snyder was paid $162 by McHose & Patton.

March 11, 1885, a company was incorporated under the name of the Laurel Hill Slate Company and McHose & Patton transferred to it all their interest in the quarry. Snyder claimed that he made a new machine and furnished it to the new company early in March. His testimony is as follows:

"McHose said to me, about the holidays, before the month of March, 1885, 'James, I am going to get a new company up. If you make a machine you can sell a machine;' and some time in March the parties came. He mentioned Mr. Black and different parties. He said: 'The party will come in March, and you can show it; it then gives money and Mr. Black will buy it.' I made the machine and put it there some time in March. It was a new machine, the machine in contest. After the 16th of March, Black and Cutter came. I was then the foreman and he was the superintendent. I was at the rubbing bed, and he came to me and said: 'This is Black and Cutter; now go to him.' I said: 'Which one is Black?' He told me who was Black, and said: 'Introduce your machine to these people and then you can sell it.' So I went there and told them what I could do with the machine. There was a sort of consent given to it; they said, 'Yes, yes,' and after a while stock was taken, and they took up the stock and the machines."

He further testified that the new company continuously used the machine after March 16, 1885.

Snyder's testimony was contradicted by the testimony of McHose.

The court charged, *inter alia*, as follows:

[The defendant has asked me to say to you that there is no evidence here from which you can find that the new company bought the machine. I must decline to do so. I do say to you that you shall examine this evidence with a great deal of caution and care, as to whether it can be found from it that the new company bought the machine from Snyder. Of course, a party may buy a thing and become liable as the buyer without an express bargain by which he says: "I will take it." There is such a thing as offering an article to another, and if the party accepts and uses it, it may be inferred that he accepted it in pursuance of the offer; and, therefore, it may be said that he is the buyer of it although he did not specially say "I will take it at the price you offer it." Upon this theory we submit this case for you to determine whether or not this Laurel Hill Slate Company became the buyer of the machine and consequently the debtor of Mr. Snyder.] [3]

Defendant alleges that this machine was not sold to the Laurel Hill Slate Company, but that before this company came into existence the machine had been sold to McHose & Patton. McHose testified that they (McHose & Patton) made a bargain for three machines at a round sum of $300. McHose says these machines were at another quarry in the neighborhood, owned by the Keims, and Snyder complained that the Keims were fooling him and would not pay for them, or perhaps would not accept them; and he offered them to him, and $300 was agreed to be paid for them; that on account of this $300 a bill was paid to Souder, which Snyder owed, and slate were furnished, amounting in all to the sum of $162. McHose says that one of the three machines was sold by Snyder to somebody else, and then he agreed to furnish the new machine in place of the old one, and that that is the way it came to the Laurel Hill Slate Company.

Who owned this machine on the 16th of March, 1885, when the plaintiff says he sold it to the Laurel Hill Slate Company? Whose was it? The fact is disputed as to who owned it on that day. Do you believe it was Snyder's machine, as he says it was, or was it McHose & Patton's machine, as McHose says it was? There is this circumstance which perhaps may have weight on this question: That $162 was the amount that settled for the hardware and slate bill. The $138 the plaintiff still claims. We have heard nothing of a price at which Snyder

offered the machine to Black and Cutter, and it may be that this confirms the testimony of McHose that all these machines were sold for $300, and that $162 had been paid on account. If that were so, it would be wrong for you today to say that the Laurel Hill Slate Company should pay for it. Phillips was called and he says he heard Snyder talk about this machine, and that Snyder had said he got $300 for the machines, and that he got slate on account of the machines. There is no pretense that Snyder sold machines to the Laurel Hill Slate Company for $300. It has been argued to you that McHose & Patton are corporators in this company defendant, and are interested in it. That really has nothing to do with the case, because the mere fact that you or anybody else becomes a corporator in some corporation, or takes stock in it, is no reason why you should pay the debts owing before. We can infer from the evidence that the Laurel Hill Slate Company took the machinery and appliances on hand which McHose & Patton owned. It had a right to do that, and it could have said that it should pay the debts of that old firm, but there is no evidence that it agreed to do that. On that theory alone the plaintiff could not recover.

[If the plaintiff has satisfied you that this Laurel Hill Slate Company, either by express words and action on the part of its representatives, or by using the machine, which had been offered to it by the plaintiff, became the owner of it, it was Snyder's machine, and that the Laurel Hill Slate Company got it from him, he ought to recover.] [4] If not, there should be no recovery on the part of the plaintiff, and then the parties who owned the machine would be McHose & Patton.

The defendant presented, *inter alia,* the following points:

1. Under the evidence the verdict must be for the defendant. *Ans.* Negatived. [1]

3. The evidence fails to establish any contract between the plaintiff and the defendant on which any recovery can be had, and, therefore, your verdict must be for the defendant. *Ans.* Negatived. [2]

The assignments of error specified: (1, 2) The answers to defendant's points; and (3, 4) the portions of the charge included within brackets.

*James S. Biery,* for plaintiff in error.—We submit that the

evidence falls far short of establishing a contract between Snyder and Black and Cutter; nor is there any evidence in the whole case that Black and Cutter were officers of this company, except the testimony of Snyder, who swears that McHose said to him they were to become the secretary and treasurer. And the further fact that Snyder was present and helped to take stock account, and never claimed the ownership of this machine, would estop him now from setting up such a claim. Epley v. Witherow, 7 Watts, 163; Bixler v. Gilleland, 4 Pa. 156; Buchanan v. Moore, 13 Serg. & R. 304, 15 Am. Dec. 601; Covert v. Irwin, 3 Serg. & R. 283.

*Heninger & Dewalt* for defendant in error.

PER CURIAM:

There was certainly some evidence in this case to submit to the jury. Snyder, the plaintiff below, states very positively that McHose said to him that he was going to get up a new company —and if he, Snyder, made a new machine he could sell it. He further states that he did make a new machine and put it on the company's premises some time in March, and that after Black came, who appears to have been the secretary of the company, he told him what could be done with the machine, and that from that time forward the machine was used by the company.

This was surely sufficient from which a jury might infer a sale. It is true, this evidence was contradicted by the testimony of McHose; but as the question thus became one of veracity between the witnesses, it was for the jury, not the court, to determine.

The judgment is affirmed.